**Marc J. ANDERSON & Jeffrey E. Grubb, Plaintiffs–Appellants,**

**v.**

**Dennis BRANEN, Ross Kindestin, Defendants,**

**Ed Wisniefski, Defendant–Appellee.**

**No. 719, Docket 93–6179.**

United States Court of Appeals, Second Circuit.

Argued Nov. 23, 1993.

Decided Feb. 24, 1994.

Joseph F. Tringali, Simpson, Thacher & Bartlett, New York, N.Y. (Nicholas Even, Simpson, Thacher & Bartlett, New York, N.Y., William B. Rubenstein, Ruth E. Harlow, American Civil Liberties Union Foundation, New York, N.Y., Arthur Eisenberg, New York Civil Liberties Union, New York, N.Y., of counsel), for plaintiffs-appellants.

B. Joseph Sher, United States Department of Justice, Torts Branch, Civil Division, Washington, D.C. (Frank W. Hunger, Assistant Attorney General, Civil Division, Washington, D.C., Mary Jo White, United States Attorney for the Southern District of New York, New York, N.Y., Barbara L. Herwig, United States Department of Justice, Civil Division, Appellate Staff, Pierre R. St. Hilaire, United States Department of Justice, Torts Branch, Civil Division, Washington, D.C., of counsel), for defendant-appellee.

Before: MESKILL, ALTIMARI, and WALKER, Circuit Judges.

ALTIMARI, Circuit Judge:

Plaintiffs-appellants Marc J. Anderson and Jeffrey E. Grubb appeal from a judgment entered in the United States District Court for the Southern District of New York (Owen, J.) following a jury verdict in favor of defendant-appellee Ed Wisniefski. 799

F.Supp. 1490. On appeal, Anderson and Grubb raise several challenges to the district court's jury instructions. Specifically, they contend that: (1) the district court erred in declining to charge the jury on the duty of law enforcement officials to intercede when fellow officers are committing constitutional violations in their presence; (2) the district court erroneously charged the jury concerning reasonable force by using the subjective substantive due process standard; and (3) the district court erred in refusing to instruct the jury that it should treat reasonableness of force as a continuing inquiry.

For the reasons set forth below, we affirm in part, reverse in part, and remand for a new trial.

## BACKGROUND

At approximately 6:00 p.m. on November 16, 1988, defendants Dennis Branen and Ross Kindestin, two Drug Enforcement Administration ("DEA") agents, were involved in an altercation with Anderson and Grubb outside a parking garage located on West 61st Street in Manhattan. Ed Wisniefski, a supervisory DEA agent, was also involved in the confrontation. The parties offer conflicting versions of the events that took place on the evening in question.

### (A) *Grubb and Anderson's Version Presented at Trial*

Grubb and Anderson presented the following version of the facts. They maintain that Grubb drove a motorcycle to a parking garage located on West 61st Street on the evening in question to pick up Anderson from work. While driving up the street, Grubb tried to maneuver the motorcycle around a parked DEA automobile near where Anderson waited, but the foot peg of the motorcycle tapped the bumper of the parked vehicle. Immediately thereafter, DEA agent Kindestin, without identifying himself as a federal officer, approached Grubb and physically assaulted him. In an attempt to prevent the motorcycle from tipping over, as well as to separate Grubb and Kindestin, Anderson reached for the back of Kindestin's jacket.

Without warning and without identifying himself as a federal officer, DEA agent Branen attacked and beat Anderson from behind, mocking him as a "faggot." Anderson offered no resistance. Supervisory DEA agent Wisniefski observed the exchange from the door of the ground floor of the parking garage, approached Anderson, and slammed Anderson's head on the hood of the vehicle.

Grubb asked the agents why they had beaten Anderson and was told, "it doesn't matter what we have done to your boyfriend, you faggot." Branen and Kindestin then approached Grubb, dragged him down the sidewalk and beat him. Grubb, like Anderson, offered no resistance. While the agents beat Grubb, Wisniefski stood at the DEA vehicle. Throughout the attacks, the agents shouted homophobic epithets at Grubb and Anderson.

### (B) *Wisniefski's Version Presented at Trial*

The defendants presented a very different version of the events. According to them, on the evening in question, supervisory DEA agent Wisniefski attempted to retrieve an agency vehicle from a parking garage located on West 61st Street. Having discovered that the vehicle was blocked in, Wisniefski sought the assistance of his staff, DEA agents Branen and Kindestin. Kindestin drove with Branen to the front of the garage, while Wisniefski walked there. When Wisniefski arrived at the garage, he went inside to locate and retrieve the vehicle. While searching for the keys to the vehicle blocking his, Wisniefski heard a commotion outside the garage. He opened the door and observed a man on a motorcycle, Grubb, engaged in a verbal exchange with Kindestin.

Immediately thereafter, a second individual, Anderson, lunged at Kindestin from behind, at which point Branen went to Kindestin's assistance. Wisniefski left the garage and interrupted the fight between Branen and Anderson by grabbing Anderson by the waist and pushing him over the hood of the car. Wisniefski indicated that he was a federal officer, displayed his badge, and commenced a pat down search of Anderson. Anderson did not resist. Wisniefski re-

mained at the car, with his back turned from all subsequent actions and his hand on the small of Anderson's back until he was brought a set of handcuffs. Wisniefski then handcuffed Anderson and placed him in the government vehicle. In the meantime, Branen subdued Grubb.

### (C) *The Aftermath*

Grubb and Anderson were subsequently confined in a DEA vehicle and then placed under arrest for assaulting federal agents. The agents brought Grubb and Anderson to a police precinct where they were fingerprinted and charged. Grubb and Anderson were released from custody later that evening, and all charges were eventually dropped.

Grubb and Anderson commenced an action against all three DEA agents in the district court, alleging claims arising under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and the Federal Tort Claims Act, 28 U.S.C. §§ 1436(b), 2671–80 (1988). At trial, they argued that the DEA agents had deprived them of their constitutional rights under the Fourth and Fifth Amendments. A jury trial resulted in a hung jury on the counts against Branen and Kindestin, and a verdict in favor of Wisniefski.

Anderson and Grubb now appeal, claiming that they were denied a fair trial because the district court improperly instructed the jury. Branen and Kindestin are not parties to this appeal.

### DISCUSSION

On appeal, Anderson and Grubb contend that the district court committed prejudicial errors of law in its jury instructions which prevented the jury from properly considering two critical elements of their constitutional claims against Wisniefski: (1) the duty of law enforcement officials to intercede on behalf of a citizen whose constitutional rights are being violated, and (2) the objective reasonableness of the force used against them.

■ We review a claim of error in the district court's jury instructions *de novo*, and will reverse on this basis only if the plaintiffs-appellants can show that in viewing the charge given as a whole, they were prejudiced by the error. *See United States v. Pujana–Mena*, 949 F.2d 24, 27 (2d Cir.1991); *Lowe v. Commack Union Free Sch. Dist.*, 886 F.2d 1364, 1378 (2d Cir.1989), *cert. denied*, 494 U.S. 1026, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990). A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law. *See Folger Adam Co. v. PMI Indus., Inc.*, 938 F.2d 1529, 1533–34 (2d Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 587, 116 L.Ed.2d 612 (1991); *see also Norfleet v. Isthmian Lines, Inc.*, 355 F.2d 359, 362–63 (2d Cir.1966) (holding jury charge must show no tendency to confuse or mislead jury as to applicable principles of law). An erroneous instruction, unless harmless, requires a new trial. *See Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 312, 106 S.Ct. 2537, 2545–46, 91 L.Ed.2d 249 (1986).

### (1) *The Duty to Intervene*

Grubb and Anderson argue that the district court erred in refusing to include in its charge to the jury their proffered instruction that a law enforcement official has a duty to intervene when fellow officers are committing constitutional violations in his presence. We agree.

### (A) *Waiver*

■ As a preliminary matter, Wisniefski argues that Grubb and Anderson waived any challenge to the district court's refusal to charge the jury on the duty to intercede by failing to object on the record. A party who fails to object to a jury instruction at trial waives consideration of claims relating to that charge on appeal. *See Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). This Court, however, will disregard the failure to object where there is plain error affecting substantial rights that goes to the very essence of the case, *see United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982), or where the party's position has pre-

viously been made clear to the trial court and it was apparent that further efforts to object would be unavailing, *see, e.g., Ostrowski v. Atlantic Mut. Ins. Cos.,* 968 F.2d 171, 177 (2d Cir.1992).

█ In the present case, the record indicates that prior to the onset of jury deliberations, Anderson and Grubb adequately apprised the district court of their position that the jury should be instructed on the duty to intercede. Their counsel first addressed this charge in the proposed jury instructions. Thereafter, during the charge conference, the issue was expressly raised and discussed at length. At that time the district court agreed that it would give such an instruction. The following morning, however, just prior to summation, the district court retracted and refused to include the instruction. Significantly, at the outset of a short conference held in the robing room after the jury charge, the district court expressly stated "that if this is something that we raised the other day, you don't need to repeat yourself." It is clear, therefore, that a further objection to the charge as given, on a ground already thoroughly discussed, would have been futile. Under these circumstances, we find that there was no waiver.

### (B) *Merits of the Instruction*

Wisniefski argues that the district court was justified in refusing to instruct the jury on the duty to intercede because there was no evidence to support such a theory of recovery. Wisniefski contends that because there was no evidence adduced at trial that he was a tacit collaborator or had a realistic opportunity to intervene, there was no duty to intervene. We find, however, that this contention incorrectly rests upon an acceptance of only one version of the facts.

█ A litigant is entitled to an instruction on a claim where that claim is supported by evidence of probative value. *See Boyle v. Revici,* 961 F.2d 1060, 1062 (2d Cir.1992). All that a party needs to show is that there is some evidence supporting the theory behind the instruction so that a question of fact may be presented to the jury. *See Hilord Chem. Corp. v. Ricoh Elecs., Inc.,* 875 F.2d 32, 38 (2d Cir.1989). The failure to give an instruc-

tion under such circumstances is error that warrants a new trial if that error is prejudicial. *See Boyle,* 961 F.2d at 1063.

█ In the present case, Anderson and Grubb requested that the district court charge the jury on the duty of a law enforcement official to intervene. It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. *See O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir.1988); *Byrd v. Clark,* 783 F.2d 1002, 1007 (11th Cir.1986); *Webb v. Hiykel,* 713 F.2d 405, 408 (8th Cir. 1983); *Bruner v. Dunaway,* 684 F.2d 422, 426 (6th Cir.1982), *cert. denied,* 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983); *Byrd v. Brishke,* 466 F.2d 6, 11 (7th Cir. 1972). An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, *see O'Neill,* 839 F.2d at 11–12; (2) that a citizen has been unjustifiably arrested, *see Gagnon v. Ball,* 696 F.2d 17, 21 (2d Cir.1982); or (3) that any constitutional violation has been committed by a law enforcement official, *see O'Neill,* 839 F.2d at 11. In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring. *See id.* at 11–12. Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise. *See id.*

█ Anderson and Grubb proposed to the district court an instruction based on the above-cited law concerning an officer's duty to intercede to protect the constitutional rights of a citizen. By declining to include an instruction on the duty to intervene in its jury charge, the district court focused not on Anderson and Grubb's evidence of the opportunity to intervene, which the jury could have credited, but rather concentrated on Wisniefski's claim that the event happened so quick-

ly that the officers did not have time to assess the situation.

Whether Wisniefski had a realistic opportunity to intercede to prevent the harm from occurring is a close factual question. Wisniefski presents evidence that he could not tell from the garage what had been occurring, other than that there was an altercation going on. He contends that he could not at that point have known whether or not Anderson and Grubb had committed a crime. Further, he testified that his back was turned to the entire incident once he had secured Anderson against the car.

The district court, however, ignored the evidence that Wisniefski had several opportunities to intervene. First, Anderson and Grubb presented evidence that Wisniefski had time to assess the situation because he was nearby in a doorway on the ground floor of the parking garage. Moreover, Wisniefski admitted that he had an opportunity to stop the fighting, which he did by grabbing Anderson, although he stated that he did so to restrain Anderson from attacking Branen.

There is a factual dispute as to the accuracy of Wisniefski's testimony that he could not prevent the altercation with Grubb because he was occupied subduing Anderson. At trial, there was explicit testamentary and photographic evidence presented that shows Wisniefski standing on the sidewalk while Anderson is alone in the car, unhandcuffed, and the two other agents are standing over the curled up body of Grubb.

Finally, even if Wisniefski had no opportunity to intervene at the start of the incident, there was evidence for the jury to find that he had such an opportunity with respect to subsequent constitutional violations, such as when Branen beat Grubb for questioning what had happened to Anderson. There is also evidence that the jury could have credited that Wisniefski was present at the precinct when Anderson and Grubb were booked for assaulting federal agents and again had ample time to prevent a false arrest.

In sum, we are not persuaded that there was insufficient evidence adduced at trial to support a jury instruction on the duty to intervene. Rather, Anderson and Grubb's request for an instruction on the duty to intervene was clearly supported by at least some evidence of probative value. The jury should have been given the opportunity to weigh this evidence and apply the instruction. *See Franks v. United States Lines Co.*, 324 F.2d 126, 127 (2d Cir.1963). Accordingly, we find that the district court's refusal to give such a charge was prejudicial error entitling Anderson and Grubb to a new trial with respect to Wisniefski.

### (2) *The Reasonableness of the Force*

Anderson and Grubb argue that the district court's jury instructions with regard to their excessive force claim constituted plain error because the instructions contained, in part, references to an inapplicable standard that measured subjective factors such as "malice" and "good faith." They maintain that the jury was erroneously directed to consider the state of mind of the DEA agents to determine whether or not the agents had used excessive force in effecting their arrest. Although the district court made references to subjective standards in its charge, we find that a fair reading of the instructions in their entirety fails to establish that the error was prejudicial.

#### (A) *Waiver*

As a threshold matter, we again note that Anderson and Grubb failed to object on the record to the district court's charge. Unlike their first claim, however, Anderson and Grubb concede that, absent plain error, their failure to object precludes them from raising this argument on appeal. *See Frady*, 456 U.S. at 163, 102 S.Ct. at 1592. Under the plain error doctrine, Anderson and Grubb must therefore show that the district court's error in charging the jury was fatal to the integrity of the trial. *See Brenner v. World Boxing Council*, 675 F.2d 445, 456 (2d Cir.), *cert. denied*, 459 U.S. 835, 103 S.Ct. 79, 74 L.Ed.2d 76 (1982).

#### (B) *The Proper Standard*

Claims that law enforcement officials used excessive force must be analyzed under the Fourth Amendment and its standard of objective reasonableness. *See Graham v.*

*Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989); *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 1699–1700, 85 L.Ed.2d 1 (1985). Under this standard, the jury need only consider whether the officers acted reasonably in light of the facts and circumstances of the situation they faced, without regard to their underlying motives or subjective intent toward the suspect. *See Graham,* 490 U.S. at 397, 109 S.Ct. at 1872. *Graham* overruled prior practice, including precedent in this circuit, that allowed the jury to consider subjective factors like "malice" and "good faith" in determining whether the force used by the defendants was excessive. *See Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

■ In the present case, the district court regrettably mixed objective and subjective factors when it instructed the jury on excessive force. Resolution of Anderson and Grubb's claim turns on whether in viewing the charge as a whole, we are persuaded that the district court's references to the outmoded standard were prejudicial. *See Warren v. Dwyer,* 906 F.2d 70, 73 (2d Cir.), *cert. denied,* 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990). An instruction cannot be deemed prejudicial on the basis of the partial use of erroneous words when the court corrects its mistake by clearly elucidating the proper standard the jury is to use. *See id.; see also United States v. McCormack,* 829 F.2d 322, 324 (2d Cir.1987) (holding that statements taken from charge must be judged in context of entire jury instruction).

In the case at hand, a review of the district court's erroneous charge at the beginning of its instructions shows that the district court mentioned that the jurors could consider whether the officers acted in good faith or whether they acted maliciously. As noted above, prior to *Graham,* such an inquiry into the subjective motivation of the individual officer was proper in excessive force claims. *See Johnson,* 481 F.2d at 1033. Under *Graham* and its progeny, however, such subjective factors are no longer appropriate. A review of the entire jury instruction, however, indicates that although the district court's

charge began with the erroneous standard, the court eventually cured this error and clearly charged the jury under the correct objective reasonableness standard.

For example, in its instructions the court stated:

> Now, in order for a plaintiff to prove that a defendant used excessive force, it must be force that was clearly excessive to the need and the excessiveness of which was *objectively unreasonable,* that means looking at this from the outside, if you are looking at this from the outside, *objectively unreasonable* in light of the facts and circumstances at the time. . . .
>
> This reasonableness, as I said, is an *objective* one, this reasonableness inquiry. The question is whether the officer's actions here viewed by you were *objectively reasonable in light of the facts and circumstances confronting them without regard to their underlying intention or motivation.* (emphasis added).

■ Although the district court erred by mentioning early in its instructions the subjective standard, its clarification of the instruction directed the jury to consider only the correct objective standard, thereby removing any ambiguity from the jurors' minds as to which standard to apply. *See Warren,* 906 F.2d at 73–74. Accordingly, because the charge as a whole instructed the jury on the correct legal principles, we find that the district court's inclusion of subjective terms in its jury instructions does not rise to the level of plain error.

### (3) *Continuing Inquiry*

Anderson and Grubb contend that the district court erred in declining to include their proffered instruction that the jury was required to assess the reasonableness of the officers' activities at successive moments in time. They argue that such an instruction was necessary to avoid potential jury confusion and to clarify the subtleties that a juror must consider in evaluating the reasonableness of the officers' use of force during a protracted incident. We disagree.

■ A litigant is entitled to a jury instruction that correctly reflects the applica-

ble law and sufficiently covers the essential issues. *United States v. Imran*, 964 F.2d 1313, 1317 (2d Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 626, 121 L.Ed.2d 558 (1992). A party is not, however, entitled to prescribe the exact language of that charge. *See id.*

■ As discussed above, in *Graham*, the Supreme Court held that excessive force claims should be analyzed under the Fourth Amendment's reasonableness standard, focusing on the totality of the circumstances confronting the officials at the time of the arrest. 490 U.S. at 397, 109 S.Ct. at 1872. This standard evaluates the reasonableness of the force by taking into account the unpredictable dynamics facing the officer. *See id.* at 396–97, 109 S.Ct. at 1872. Measured against this standard, we find that in the instant case, the district court's jury charge was sound. The district court used the specific language from *Graham* to instruct the jury on the reasonableness of a particular use of force. *See id.* For example, in its instruction the court stated:

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20–20 vision of hindsight. The nature of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation.

That instruction properly states the law with respect to reasonable force and conveys to the jury the necessity of evaluating whether the force employed by Wisniefski was reasonable in light of the circumstances and dangers facing him at the time of his encounter with Anderson and Branen. While we can envision cases in which a more specific instruction might be appropriate or indeed required, a specific instruction for the jury to consider the reasonableness of the force as a moment-by-moment inquiry was not necessary in this case. Accordingly, we find that the district court gave an accurate and correct jury instruction that did not require further explanation. *See United States v. Bayer*, 331 U.S. 532, 536, 67 S.Ct. 1394, 1396,

91 L.Ed. 1654 (1947) (holding that "[o]nce a judge has made an accurate and correct charge, the extent of its amplification must rest largely in his discretion").

## CONCLUSION

Based on the foregoing, we affirm in part, reverse in part, and remand the case to the district court for a new trial consistent with this opinion.