Linda SAGENDORF–TEAL, Plaintiff,

v.

COUNTY OF RENSSELAER; W. Warren McGreevy; Rensselaer County Sheriff; John May, Sergeant; Edward Phillips, Undersheriff; Charles Walker, Captain; Hal Smith, Lieutenant; and Rensselaer Employees, Agents, Servants, and/or Employees of the County of Rensselaer, Defendants.

No. 90–CV–152.

United States District Court, N.D. New York.

Nov. 22, 1995.

Gleason, Dunn, Walsh & O'Shea, Albany, New York (Mark T. Walsh, of counsel), for Plaintiff.

Carter, Conboy, Case, Blackmore, Napierski & Maloney, P.C., Albany, New York (Gregory S. Mills, of counsel), for Defendants.

### *MEMORANDUM DECISION AND ORDER*

HURD, United States Magistrate Judge.

## I. *INTRODUCTION.*

On February 7, 1989, plaintiff Linda Sagendorf–Teal was terminated by the defendant Undersheriff Edward Phillips ("Phillips"), from her probationary position as a Corrections Officer with the Rensselaer County Sheriff's Department. She brought suit pursuant to 42 U.S.C. § 1983 claiming that she was terminated because of exercise of her First Amendment right to free speech. On September 22, 1995, a jury awarded her damages in the amount of $76,889.44 in back pay plus interest against Phillips. The action was dismissed against the other defendants.

The Court denied plaintiff's request for reinstatement to her former position. Judgment was entered on September 25, 1995.

Phillips has filed post trial motions. He seeks judgment in his favor as a matter of law pursuant to Fed.R.Civ.P. 50(a), or a new trial pursuant to Fed.R.Civ.P. 59, or in the alternative a remittitur in the award of damages. The plaintiff moves for an award of front pay. Oral argument was heard on November 9, 1995, in Utica, New York. The court reserved decision.

## II. *DISCUSSION.*

### A. *Defendant's Motions*

Defendant's motions for judgment as a matter of law, for a new trial, or for a diminution in damages, stem from several arguments. Defendant first argues that the Court improperly charged the jury with regard to missing witnesses. He next avers that the Court erred in responding to the jury's question asking for a clarification of the Court's charge. Third, defendant puts forth the position that he is entitled to qualified immunity, and finally, he posits that plaintiff does not have a protected property interest in employment beyond the probationary period, and thus her damages should be reduced accordingly.

### 1. *MISSING WITNESS CHARGE:*

The Court charged that Matthew Plumley. Thomas Job, Scott Ryan, Ronald Fountain, and James Karam were not called to testify and could be viewed as missing witnesses. Because these people were "equally available" to both parties, the defendant claims error.

■ The trial court carries sound discretion in determining whether to issue a missing witness charge. *United States v. Mittelstaedt,* 31 F.3d 1208, 1215 (2d Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 738, 130 L.Ed.2d 640 (1995); *United States v. Adeniji,* 31 F.3d 58, 65 (2d Cir.1994); *United States v. Torres,* 845 F.2d 1165, 1170–71 (2d Cir.1988). "All that a party needs to show is that there is some evidence supporting the

theory behind the instructions so that a question of fact may be presented to the jury." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994).

■ Plaintiff denies even subpoenaing these five witnesses, and disputes the argument that because she subpoenaed past and present employees of the County, the missing witnesses (who were both past and present employees), should be deemed equally available. " ' "[A]vailability" of a witness . . . depend[s] . . . on all the facts and circumstances bearing upon the witness's relation to the parties, rather than merely on physical presence or accessibility.' " *United States v. Myerson,* 18 F.3d 153, 158 (2d Cir.1994) (quoting *Torres,* 845 F.2d at 1170), *cert. denied,* —— U.S. ——, 115 S.Ct. 159, 130 L.Ed.2d 97 (1994).

■ Of the five witnesses addressed in the charge at issue, three were still employed by the County at the time of trial. Defendant does not dispute that subpoena power alone does not give the plaintiff equal control over an employee of the County. Only the former County employees, Plumley and Fountain, fall close enough to merit a review of their availability. Applying the above-cited test, all five were not equally available. Plumley, Fountain, Karam, and Ryan were all involved in the so-called Palmer incident. Testimony described corrections officers as a group to be close and bonding. Each of the corrections officers involved, including Plumley and Fountain, gave conflicting statements to that of plaintiff, accusing her of improper conduct. In sum, Plumley and Fountain bore significant interest in a favorable outcome for the defense: through their support of former co-workers and through their own personal involvement.

■ Defendant carries no right to be apprised of a jury charge prior to resting. The trial court has discretion to change its charge up until the time of its delivery. *See Estate of Lutren v. Chesapeake & O.R.R.,* 592 F.2d 941, 945 (6th Cir.1979).[1] Here, a closing argument was made that brought to

---

1. The case actually references a right to be apprised that is balanced by the trial court discre-

tion to alter a charge if something comes up in closing arguments.

light an issue of missing witnesses. Counsel for the plaintiff included in his closing, a reference to employees and former employees of the County that were not called to testify. Prior to this time, the Court had no request for, or reference to, a charge explaining the effect of witnesses failing to testify. Neither did either party broach the subject during the jury charge conference held prior to closing arguments. This Court made the determination, when confronted with the issue during plaintiff's closing, to include an instruction about missing witnesses to clarify to the members of the jury their options in weighing such an absence that was already brought to their attention. No mandatory language was used; and the option to disregard the witness' absence was clearly presented.

 More important, any error was harmless. "To succeed on a challenge to a district court's jury instructions, an appellant must show that the requested charge accurately reflected the law, and that viewing the charge actually given as a whole, he was prejudiced." *Mittelstaedt*, 31 F.3d at 1215. These "missing witnesses" were expected to testify regarding plaintiff's various rules infractions. However, the defendant did not rely on these violations as justification for plaintiff's termination. Rather, the justification relied upon was that she failed to assure him of a complete disassociation from a prisoner. The charge accurately displayed the jurors' options in drawing inferences, and likewise told of the option of drawing no inference. These factors combine to support a conclusion that no harm was committed by such a charge.

### 2. *JURY'S QUESTION TO THE COURT:*

 The jury asked for clarification of a point during their deliberation. Specifically, they asked, "[P]lease specify what is meant by the statement 'he would have made the same decision.' Does this mean the same day or sometime later during her eight month probationary period or ever?" The Court responded by stating "[D]efendant would have made the same decision on the same day." Defendant claims that he must

only establish that he would have made the same decision, and places no time constraints upon that determination. Otherwise, too strict a standard would be placed upon the defendant to prove this defense. No case law was cited for this proposition.

The Supreme Court, in the case of *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), found that once plaintiff establishes that her conduct is constitutionally protected, and that conduct was a substantial or motivating factor in the decision to terminate her, the defendant is in turn entitled to an opportunity to prove by "a preponderance of the evidence that [he] would have reached the same decision as to [her] employment even in the absence of the protected conduct." *Id.* at 287, 97 S.Ct. at 576. Once plaintiff has shown a motivating factor underlying an act that violates her rights, she has satisfied her case unless the defendant shows that there exists another more significant motivating factor—a legitimate factor—which standing alone would have rendered the same decision. Regarding this shift in the burden then, "[t]he employer ... is given the opportunity to prove that there were legitimate, nondiscriminatory reasons for [his] action and that the result would have been the same even in the absence of the allegedly improper basis for its conduct." *Jund v. Town of Hempstead*, 941 F.2d 1271, 1289 (2d Cir. 1991). The emphasis in this determination is on the existence of other motivating factors that would legitimize the decision that was rendered.

Defendant seeks to expand the standard and allow the jury to decide that another decision would have taken place at a future date, having the same effect on the plaintiff, and legitimizing an unconstitutional decision made on February 7, 1989. This is not the *Mt. Healthy* test. An unconstitutional termination on February 7, cannot be rectified by a jury determination that there would have been a legitimate termination on February 8, or March 8, or May 8. That would not be the same decision at issue, but a subsequent decision directed to the issue of damages but not liability. Defendant has failed to show

that error was committed in responding to the jury's question in the manner done.

### 3. QUALIFIED IMMUNITY:

■ Defendant seeks dismissal of the complaint on the basis that he was entitled to qualified immunity for his act of terminating the plaintiff. He claims that it was objectively reasonable for him to believe that his act did not violate plaintiff's rights. He takes no issue with the proposition that the plaintiff's right not to be terminated for exercising her First Amendment right of free speech was clearly established at the time of the termination.

The jury found that the plaintiff's statement concerning the Palmer incident was a substantial or motivating factor in the defendant's decision, and that the defendant failed to demonstrate that he would have made the same decision without considering the protected speech. Viewing a decision to terminate an employee because of a statement implicating the wrongdoing of fellow employees as not in violation of the terminated employee's rights, would not be objectively reasonable. Defendant knew, or should have known, of the existence of the employee's right to speak freely, and a reasonable person knowing of that right would believe termination based upon such speech to be in violation of that right. The defendant is not entitled to a dismissal based upon qualified immunity.

### 4. PLAINTIFF'S DAMAGES:

■ Defendant seeks remittitur of plaintiff's damages to the time of her probationary period rather than continuing through to the date of trial. As a probationary employee, plaintiff did not have a property interest in continued employment.

"[T]he existence or nonexistence of a property interest is irrelevant to the First Amendment claim." *Dobosz v. Walsh*, 892 F.2d 1135, 1142 (2d Cir.1989); *see also Perry v. Sindermann*, 408 U.S. 593, 596–97, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972). In *Clarke v. Frank*, 960 F.2d 1146 (2d Cir.

1992), the Second Circuit not only affirmed an award of back pay to a probationary employee, but remanded for calculation of additional damages after his refusal to accept reinstatement. *Id.* at 1152. The damages awarded by the jury should stand.

### B. *Plaintiff's Motion for Front Pay*

■ In determining the appropriate remedies to be awarded to a prevailing plaintiff, "District Courts should fashion remedies ensuring that victims ... are made whole." *Barbano v. Madison County*, 922 F.2d 139, 146 (2d Cir.1990). Plaintiff argues that since reinstatement was found to be impracticable, an alternative must be found. The court carries broad discretion in determining appropriate remedies, "and where ... the district court makes a specific finding that an award of back pay was sufficient to make a plaintiff whole, no abuse of discretion can be found." *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 145 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *see also Talada v. Int'l Serv. Sys. Inc.*, 899 F.Supp. 936, 956–58 (N.D.N.Y.1995).

The case of *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724 (2d Cir.1984)—cited by plaintiff in support of her motion—found that in certain instances where reinstatement has been found impracticable, denial of such "without an award of reasonable, offsetting compensation, would leave the plaintiff irreparably harmed in the future.... To prevent this injustice a reasonable monetary award of front pay is necessary as 'equitable relief.'" *Id.* at 728.[2]

The Second Circuit in *Whittlesey* effectively framed that language, however, stating that while front pay should only be awarded when reinstatement is impracticable, they were not required to engage in undue speculation that would result from the plaintiff's high level position and the few years remaining until mandatory retirement. The court stated that the four year period remaining until retirement "did not involve some of the

---

**2.** While *Whittlesey* is a case involving an ADEA claim, *Frank v. Relin*, 851 F.Supp. 87 (W.D.N.Y. 1994), and *Rao v. New York City Health and*

*Hosps. Corp.*, 882 F.Supp. 321 (S.D.N.Y.1995) (§ 1983 wrongful termination claims), both cited *Whittlesey* regarding front pay.

uncertainties which might surround a front pay award to a younger worker." *Whittlesey,* 742 F.2d at 729.

In *Bonura v. Chase Manhattan Bank, N.A.,* 629 F.Supp. 353 (S.D.N.Y.1986), front pay was disallowed, and the court differentiated its facts from *Whittlesey,* noting that in *Whittlesey,* the front pay period was four years, whereas in *Bonura,* the period calculated would be eleven and sixteen years for the two plaintiffs involved. *Id.* at 363 n. 3. This case holds more similarities to the latter. Plaintiff was a probationary employee with Rensselaer County and was 23 years old when she was terminated on February 7, 1989.

Plaintiff seeks front pay, calculated in either of two forms. First, she suggests an award of front pay until such time as she can obtain an education so that she may obtain a comparable position to that of corrections officer. She includes in this block of time, the year prior to her son attending first grade, the first full-day school grade.[3] She then seeks four further years of unmitigated front pay so that she may stop work and attend school.

The second method suggested calls for padding her Fish Fry wages until such time as they obtain the level of her salary as a corrections officer. She estimates that this would take at least 17.5 years.

This Court, in its discretion, finds that both proposals are too speculative. The first hypothesizes without support, at the number of years needed to obtain a skill through education, that she speculates would have been achieved on the job. The second speculates at the rate of raises she would obtain at her present position, and both speculate that her tenure as a corrections officer was ensured for life. Such speculation outweighs

a showing of the need, if any, for a front pay award to make plaintiff whole.[4] This Court is of the opinion that plaintiff has been made whole through the jury award, and any additional compensation in the form of front pay is not required.

## III. *CONCLUSION.*

Therefore, it is

ORDERED that

1. Defendant's motions for judgment as a matter of law, for a new trial, or for a remittitur of damages are **DENIED;** and

2. Plaintiff's motion for front pay is **DENIED.**

Plaintiff may file and serve a motion for attorney fees and expenses on or before December 5, 1995. Defendant may file and serve papers in opposition by December 19, 1995. The motion will be on submit. The parties are encouraged to settle or stipulate the amount of attorney fees and expenses.

Appeals of all matters, whether trial or post trial, are extended to thirty (30) days from the resolution of the motion for attorney fees and expenses.

IT IS SO ORDERED.

---

3. Plaintiff proposes a mitigation of this block of time by subtracting her annual wage earned at Ted's Fish Fry, her present position. The Court notes that her plan to work full-time during this period seems to confound the initial reasoning why compensation for this time period is sought in the first place—i.e. her son is not yet away at grade school for a full day.

4. The Second Circuit, in the case of *Saulpaugh,* 4 F.3d at 135, found that plaintiff—a probationary employee—would not require the equitable reme-

dy of front pay to make her whole. "[F]ront pay is not appropriate when a plaintiff has been fully compensated for all compensable injuries resulting from the defendants' wrongful actions: 'After a jury finds § 1983 liability in a loss-of-employment case, the court must attempt to make the plaintiff whole, yet the court must avoid granting the plaintiff a windfall.'" *Rao,* 882 F.Supp. at 332 (quoting *Standley v. Chilhowee R–IV Sch. Dist.,* 5 F.3d 319, 322 (8th Cir.1993) (Standley was a one-year probationary teacher)).