SUMMARY ORDER
Plaintiff-appellant Yvonne Husbands, on behalf of her minor son Darryl Forde, appeals from the district court’s August 22, 2007, entry of summary judgment on all counts in favor of defendants the City of New York, Police Commissioner Raymond Kelly, Police Officers Richard Allen, Keith Livingston, Peter Wong, Ronley Griffith, Rodrigo Fonteboa, Andrew Tor-lincasi, and John Does 1-5. See Husbands ex rel. Forde v. City of New York, No. 05 Civ. 9252(NRB), 2007 WL 2454106 (S.D.N.Y. Aug.16, 2007).[1] Husbands had brought claims under 42 U.S.C. § 1983 and New York State law against defendants in connection with the arrest and prosecution of her son, who had been accused of firing a gun in the vicinity of 390 Bushwick Avenue in Brooklyn, New York, on the evening of November 17, 2004. We assume the parties’ familiarity with the underlying facts and procedural history.
We review a district court’s grant of summary judgment de novo, construing all facts in favor of the nonmoving party. See, e.g., Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir.2005). Summary judgment is appropriate where “there is no genuine issue as to any material fact.” Fed.R.Civ.P. 56(c). “A fact is material ... when it might affect the outcome of the suit under the governing law. An issue of fact is genuine if the evidence is such that a reasonable jury could [have] return[ed] a verdict for the [appellant].” Jeffreys, 426 F.3d at 553 (citation and internal quotation marks omitted).
On appeal, Husbands argues that the district court erred in granting summary judgment because: (1) the police lacked probable cause to arrest Forde; (2) the false and inconsistent testimony of the officers on the scene established the malice necessary to support a claim of malicious prosecution; (3) the arresting officers used excessive force in arresting Forde; and (4) the police failed to investigate another individual who was allegedly the likely shooter.

False Arrest and Malicious Prosecution

“ Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.’” *127 Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir.2007) (quoting Devenpeck v. Alford, 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)). “An officer has probable cause to arrest when he has ‘knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.’ ” Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir.2003) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir.1996)).
Here, the following facts are not in dispute: police officers were in front of a housing project at 370 Bushwick Avenue arresting a person (not party to this lawsuit) who was resisting their efforts; a crowd of observers gathered, one of whom interfered with efforts to subdue the suspect; “[a] series of four to five gunshots suddenly rang out”; “[t]he gunshots sounded like they were coming from the direction of 390 Bushwick”; Forde, wearing a striped shirt, was standing “alone” halfway between 370 and 390 Bushwick, with his back toward 390 Bushwick and facing the officers who were in front of 370 Bushwick; Officer Wong, who had no prior relationship with Forde, immediately, i.e., within two seconds, shouted “that’s him, the kid in the strip[ ]ed shirt,” and pointed to Forde; immediately after the gunshots, Forde turned around and proceeded towards the building at 390 Bushwick — the direction from which the shots had come.
On appeal, Husbands contends that probable cause was not present, as demonstrated by Wong’s conflicting descriptions of the manner in which Forde was holding the gun and the fact that no gun was ever recovered. Although Wong’s testimony at Forde’s trial for reckless endangerment and resisting arrest was not found to be sufficient to prove Forde’s guilt beyond a reasonable doubt, the probable cause standard is far below that of reasonable doubt. See United States v. Delossantos, 536 F.3d 155, 161 (2d Cir.2008). Given the undisputed facts here that shots were suddenly fired, that Wong saw Forde when he looked in the direction from which the shots had been fired, that Forde was standing alone, and that Forde promptly turned around and proceeded toward 390 Bushwick, we conclude that there was probable cause for Wong to believe that Forde was the person who had fired the shots — whether or not Wong actually saw a gun.
Given our conclusion that Wong had probable cause, the officers who actually arrested Forde also had probable cause. “[Wjhere law enforcement authorities are cooperating in an investigation ..., the knowledge of one is presumed shared by all.” Illinois v. Andreas, 463 U.S. 765, 771 n. 5, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983); see, e.g., United States v. Canieso, 470 F.2d 1224, 1230 n. 7 (2d Cir.1972). Thus, our assessment as to whether probable cause existed at the time of the arrest is to be made on the basis of the collective knowledge of the police, rather than on that of the arresting officer alone. See, e.g., Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir.2000) (“police officers,” in making probable cause determinations, are “entitled to rely on the allegations of fellow police officers”); see also Bernard v. United States, 25 F.3d 98, 102 (2d Cir.1994) (“[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information.”). In her appeal Husbands argues the district court erred in finding probable cause to arrest her son because a material question of fact exists regarding Wong’s credibility, as demonstrated by the family court’s finding that Wong’s testimony was *128 “incredible.” This argument fails because the family court’s finding focused on the credibility of Wong’s trial testimony that he actually saw Forde with a gun and with another individual to whom Forde could transfer the gun, not on whether Wong saw Forde between 370 and 390 Bushwick when Wong looked in the direction from which the shots had come. And indeed, although rejecting the testimony that Wong actually saw Forde -with a gun, the court stated that “Officer Wong may truly believe he saw a smoking gun in [Forde’s] hand.... ” In any event, as indicated above, the standard for establishing probable cause is well below that for establishing guilt beyond a reasonable doubt; and whether probable cause exists does not depend on the accuracy of the fellow officer’s observations, but rather whether it was reasonable for the arresting officer to rely on them. See Bernard, 25 F.3d at 103. There is nothing in the record to suggest that at the time of the arrest the arresting officers acted unreasonably in relying on Wong’s identification of Forde as the shooter.
The existence of probable cause to arrest Forde defeats Husbands’s claims for false arrest and malicious prosecution. See Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir.2007) (“The existence of probable cause to arrest constitutes justification and ‘is a complete defense to an action for false arrest,’ whether that action is brought under state law or under § 1983.” (quoting Weyant, 101 F.3d at 852) (other internal quotation marks omitted)); Jocks, 316 F.3d at 136 (listing the required elements of a malicious prosecution claim, one of which is “lack of probable cause for commencing the proceeding”).
Husbands’s claim of malicious prosecution also fails because there is nothing in the record that suggests that Wong’s identification of Forde as the shooter could have been motivated by malice. There was a crowded gathering in front of 370 Bushwick, making the circumstances exigent in terms of preventing more shooting in the direction of the crowd. And Wong was concerned for his own personal safety, giving him a personal, as well as an official, incentive to identify the shooter correctly. As Wong had no prior involvement with Forde, and his identification of Forde as the shooter was practically instantaneous, we conclude that the malicious prosecution claim was also properly dismissed for lack of a basis from which a reasonable inference of malice could be drawn.
On appeal, Husbands argues in the alternative that even if probable cause did exist, her malicious prosecution action is still viable because the probable cause “almost immediately dissipated” following Forde’s arrest. As this Court has previously held, “[i]n order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact.” Lowth, v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir.1996). There are no such intervening facts here. In the absence of evidence proving that the charges against Forde were groundless, there is no basis to conclude that probable cause dissipated immediately after Forde’s arrest.

Excessive Force

We disagree with Husbands’s assertion that Officer Livingston’s punch to Forde’s torso constituted excessive force. This punch is insufficient as a matter of law to support a finding of force beyond what was necessary to subdue Forde and apply handcuffs. Forde testified that his sister told him to “stay still”; but plainly he did not stay still, because plaintiffs Rule 56.1 Statement ¶ 5 states expressly that she told him to “stop moving ” (emphasis added). Further, it is clear that *129 Forde was doing something with his hands that made it difficult to handcuff him, because it is undisputed that Livingston “punched Darryl Forde one time in the side to try and get Darryl Forde to release his hands to be hand-cuffed.” J.A. at 494 (emphasis added). It is also undisputed that this arrest followed gunshots that had come from Forde’s direction; and that Livingston was concerned for his own safety and for that of the people around him. One punch causing no injury to a suspect who is resisting being put in handcuffs does not rise to the level of excessive force. See Graham v. Connor, 490 U.S. 386, 396-97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (“The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.”); Robison v. Via, 821 F.2d 913, 923 (2d Cir.1987) (“Whether the constitutional line has been crossed depends on such factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of the injury inflicted .... ” (internal quotation marks omitted)).
On appeal, Husbands also alleges use of excessive force because an officer kicked Forde in the head during his arrest, resulting in a cut above Forde’s left eye. But Forde cannot say, even after conducting discovery, who kicked him in the head; and it does not seem that any of the named defendants are rational candidates. The two detectives who were named as defendants were not at the scene. Nor, apparently, were the Police Commissioner or the two named captains, all of whom were merely alleged in the complaint to be policymakers. The only individually named defendants who were on the scene were Officers Wong, Griffith, and Livingston, but Wong and Griffith did not participate in the arrest. And since Livingston was busy trying to put handcuffs on Forde, there is no basis for inferring that Livingston either was the one who kicked Forde in the head or had the opportunity to intervene to prevent such a kick. See Anderson v. Branen, 17 F.3d 552, 557 (2d Cir.1994) (stating that a police officer who fails to intercede when excessive force is being used by fellow officers is liable only where there was “a realistic opportunity to intervene to prevent the harm from occurring”).[2]

Failure to Investigate

Relying on Russo v. City of Bridgeport, 479 F.3d 196 (2d Cir.2007), Husbands asserts that the police are liable for Forde’s prolonged detention resulting from the failure by the police to investigate whether Jerry Valdez was the actual shooter. We find this argument to be without merit, as the facts of Russo are dissimilar to the facts present here. In contrast with Russo, there was no definitive evidence in the authorities’ possession that could have proven that Forde was not the shooter. Also, Forde was not subjected to a lengthy pretrial detention and was given a prompt probable cause hearing, the adverse outcome of which he did not appeal.
We have considered Husband’s other arguments and find them to be without merit. For the foregoing reasons, the judgment of the United States District Court for the Southern District of New York is AFFIRMED.

. Husbands has not pursued on appeal any claims on behalf of Deandra Forde.

. There apparently were several unnamed (or "John Doe” labeled) officers in the lobby where Forde was arrested, none of whom were further identified.